**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Shelbourne North Water Street L.P., | ) | Case No. 13 B 44315 |
| | ) | |
| Debtor. | ) | |
| ——————————————————— | ) | |
| | ) | |
| Garrett Kelleher, | ) | |
| Plaintiff, | ) | Adversary No.  15 A 00544 |
| v. | ) | |
| | ) | |
| National Asset Loan Management, Ltd. | ) | |
| and Capita Asset Services (Ireland) | ) | |
| Limited, | ) | Honorable Carol A. Doyle |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Garrett Kelleher filed this adversary proceeding against National Asset Loan Management, Ltd. ("NALM") and Capita Asset Services (Ireland) Limited ("Capita") alleging that they are barred under provisions in the confirmed chapter 11 plan of Shelbourne North Water Street, L.P. from collecting on a personal loan made to Kelleher.  NALM and Capita (collectively the "NALM Parties") filed a motion to dismiss the complaint and then a motion for a protective order.  Before either motion was decided, Kelleher voluntarily dismissed the complaint without prejudice.  The NALM Parties then filed a motion for sanctions under Rule 9011 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1927.  They contend that there was no basis in law or fact for Kelleher's complaint and that sanctions should be imposed.

1

The court agrees and will require Kelleher and his counsel to pay the NALM Parties' attorneys' fees in defending this action.

I.      Background

    A.      The Loans and Shelbourne Bankruptcy Case

Shelbourne North Water Street, L.P. ("Shelbourne" or "debtor") was formed to own a parcel of real estate in Chicago and develop a building on it known as the Chicago Spire. Kelleher was the principal of Shelbourne.  Shelbourne borrowed approximately $69 million from the Anglo Irish Bank Corporation, Ltd. for the project (the "Shelbourne Loans").  The loan was secured by Shelbourne's Chicago Spire property and was personally guaranteed by Kelleher. Kelleher also personally borrowed another $6.1 million for the project that was secured by interests he held in another limited liability corporation (Milltown, LLC) and other personal assets (the "Kelleher Loan").  Shelbourne was not a party to the Kelleher Loan transaction in any way:  it did not sign the note, it did not guarantee the loan, and none of its assets were used as collateral.  Kelleher used the Kelleher Loan proceeds, however, to pay expenses related to Shelbourne.

In June 2010, a mechanics lien creditor of Shelbourne filed a foreclosure action in the Circuit Court of Cook County.  In October 2010, Anglo Irish Bank filed a counterclaim in the foreclosure case to collect on the Shelbourne Loans.  In 2011, Anglo Irish Bank was merged into the Irish Bank Resolution Corporation ("IBRC").  The IBRC assigned the Shelbourne Loans and the Kelleher Loan to NALM, which had been formed to acquire, hold, and manage loan assets. NALM then substituted into the foreclosure case for Anglo Irish Bank.  In June 2013, NALM

transferred the Shelbourne Loans and Kelleher's guaranty of those loans to RMW Acquisition

Company, but it retained the Kelleher Loan.  RMW intervened in the foreclosure case.

In October 2013, RMW and other creditors of Shelbourne filed an involuntary petition

under chapter 11 against Shelbourne in the bankruptcy court for the District of Delaware.  In

November 2013, the case was transferred to the bankruptcy court in this district.  RMW was the

principal secured creditor in the Shelbourne bankruptcy case.  NALM was not a creditor in that

case because it transferred the Shelbourne Loans to RMW and retained only the Kelleher Loan,

on which the debtor had no liability.  In October 2014, the court confirmed a second amended

joint chapter 11 plan of reorganization proposed by the debtor and RMW, which implemented a

settlement agreement entered into by the debtor, RMW, Kelleher, and others (but not NALM).

The plan contains release and injunction provisions that are at the center of this case.


B.    The Adversary Proceeding

In July 2015, Kelleher filed this adversary proceeding against the NALM Parties seeking

a declaratory judgment that the release and injunction provisions in the Shelbourne plan bar them

from collecting on the Kelleher Loan from Kelleher.  He alleged that he is included in the

definition of "Released Parties" under the plan and that the release and injunction provisions

apply to the Kelleher Loan.  He did not explain how the Kelleher Loan, which is a debt owed

solely by a non-debtor to a non-creditor, falls within the claims covered by the release and

injunction.

Instead, Kelleher alleged that the funds obtained from the Kelleher Loan were paid

directly to vendors for goods and services provided to Shelbourne in connection with

development of the Chicago Spire.   He also alleged that NALM "participated" in the Shelbourne

bankruptcy, even though it no longer owned the Shelbourne Loans, because NALM intervened

in the bankruptcy case for the limited purpose of protecting the confidentiality of information

that had been sealed in the state court foreclosure action.  He further alleged that NALM

"participated" in settlement negotiations that led to entry of a settlement agreement among the

debtor, RMW, Kelleher, and others that formed the basis for the joint plan that was ultimately

confirmed.  Based primarily on these allegations, Kelleher asserted that the release and

injunction in the Shelbourne plan barred the NALM Parties from collecting on the Kelleher

Loan.  Kelleher then alleged that Capita sent loan statements to Kelleher at his residence in the

U.S. seeking payment of the Kelleher Loan in violation of the release and injunction.

Kelleher sought a declaratory judgment determining that the Kelleher Loan was released

and discharged by the Shelbourne plan and that all collection actions against him were enjoined.

He also sought actual and punitive damages for the NALM Parties' allegedly willful violation of

the injunction contained in the plan and confirmation order.

On September 3, 2015, counsel for the NALM Parties sent a letter to Kelleher's counsel

requesting that Kelleher withdraw the complaint and enclosing a draft motion for sanctions

under Rule 9011 and 28 U.S.C. § 1927.  Kelleher's counsel sent a letter in response but did not

withdraw the complaint.  On October 2, 2015, the NALM Parties filed a motion to dismiss for

lack of jurisdiction.   They argued that the court lacked subject matter jurisdiction over NALM

based on the Sovereign Immunities Act.  They also asserted that there was no subject matter

jurisdiction under 28 U.S.C. § 1334 because resolving a claim owed by a non-debtor to a non-

creditor would have no impact on the debtor or the bankruptcy estate.  They further contended

4

that the court had no personal jurisdiction over either defendant under the minimum contacts test and because service of process was not proper.

Kelleher then initiated discovery to contest the NALM Parties' assertions regarding the Sovereign Immunities Act and minimum contacts. The NALM Parties moved for a protective order against Kelleher's discovery requests. At this point, in November 2015, the bankruptcy judge who presided over the Shelbourne bankruptcy case recused herself from this adversary proceeding and it was reassigned to the undersigned judge.

At a status conference held on December 17, 2015, the court questioned the parties about the issues in the case and suggested that they address the issue of subject matter jurisdiction under § 1334 before the court resolved the discovery motion relating to the other jurisdictional issues. The court also questioned the basis for Kelleher's claim that the Kelleher Loan was covered by the release and injunction provisions in the plan. The court noted that the definitions of the key terms used in these provisions appeared to limit their scope to claims against the debtor. The court gave Kelleher until January 15, 2016 to file a brief regarding the subject matter jurisdiction issue under § 1334. Instead of filing a brief on that date, Kelleher filed a notice of voluntary dismissal without prejudice.

On February 3, 2016, the NALM Parties filed the motion for sanctions now before the court. They allege that Kelleher violated both Rule 9011 of the Federal Rules of Bankruptcy Procedure and 28 U.S.C. § 1927 by filing this adversary. They contend that there was no basis in fact or law for Kelleher's claim that the Shelbourne plan provisions bar collection of the Kelleher Loan. They also assert that the adversary proceeding was filed to harass them and to vexatiously multiply the proceedings for purposes of § 1927.

5

II.    <u>Standard under Rule 9011</u>

Imposing sanctions on attorneys is never a welcomed task but the Seventh Circuit has

instructed that a serious motion for sanctions must be treated seriously by a trial court.  It is "not

a gnat to be brushed off with the back of the hand."  *Szabo Food Service, Inc. v. Canteen*

*Corporation*, 823 F.2d 1073, 1084 (7th Cir. 1987).    And a voluntary dismissal does not expunge

a violation.  *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2455

(1990).

Rule 9011 of the Federal Rules of Bankruptcy Procedure is modeled after Rule 11 of the

Federal Rules of Civil Procedure and is essentially identical to it.  *See Baermann v. Ryan (In re*

*Ryan)*, 411 B.R. 609, 613 (Bankr. N.D. Ill. 2009) ("courts look frequently to cases that interpret

Rule 11 when construing Bankruptcy Rule 9011.")  It provides two grounds for sanctions:  the

"frivolousness" clause and the "improper purpose" clause.  The frivolousness clause requires

that a party and his attorney conduct a reasonable inquiry into the facts and law that form the

basis of a pleading or motion.  *See Fred A. Smith Lumber Company v. Eididin*, 845 F.2d 750,

752 (7th Cir. 1988) (citing *Brown v. Federation of State Medical Boards*, 830 F.2d 1429, 1435-

36 (7th Cir. 1987)).  If the probability of success of a suit is very low, the suit is frivolous.  *See*

*Maxwell v. KPMG LLP*, 520 F.3d 713, 719 (7th Cir. 2008).  The improper purpose clause

prohibits a motion or pleading from being filed for the purpose of delay, harassment, or

increasing the costs of litigation.  The standard for imposing sanctions under either clause is an

"objective determination of whether the sanctioned party's conduct was reasonable under the

circumstances."  *Smith Lumber*, 845 F.2d at 752 (7th Cir. 1988) (quoting *Brown v. Federation of*

*State Medical Boards*, 830 F.2d 1429, 1435-36 (7th Cir. 1987)).  A court must determine

6

whether the arguments actually made by counsel were reasonable and not whether reasonable

arguments could have been made. *Id.* (citing *In re Ronco, Inc.*, 838 F.2d 212 (7th Cir. 1988)).

The "most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive

practices of attorneys." *Id.*

III.    <u>Motion for Sanctions</u>

The NALM Parties make a number of arguments in their motion but the most

fundamental argument is that there was no factual or legal basis for Kelleher's assertion that the

release and injunction provisions in the Shelbourne plan apply to the Kelleher Loan.  They

contend that the relevant definitions and the release and injunction provisions themselves make it

clear that the Kelleher Loan does not fall within either provision.  They also argue that they

could not be bound by the plan even if it had attempted to include the Kelleher Loan within the

release and injunction because they did not receive notice that the debtor intended to enjoin

them, they did not receive proper service of the plan, they were not creditors in the Shelbourne

bankruptcy case, they were not permitted to vote on the plan, and they did not receive a

distribution under the plan.  They further assert that Kelleher only withdrew his complaint after

the December 17, 2015 hearing at which the court expressed serious doubt that the release and

injunction provisions applied to the Kelleher Loan.

Kelleher's response to the motion is telling.  He avoided the most important issue:  how

the plan language applies to release his liability to NALM on the Kelleher Loan.  Instead, he

contends that a chapter 11 plan could potentially release a claim owed by a non-debtor to a non-

creditor, and he challenges some factual allegations in the motion regarding why Capita began

sending loan notices to Kelleher's address in the U.S.  He also argues that the motion for

sanctions is not timely.  But he provides no analysis of the relevant plan language that could

provide a reasonable justification for his assertions in the complaint.

> The court also examined the complaint for any specific analysis of the language in the

plan that might support Kelleher's claim.  Kelleher quoted some of the relevant plan provisions

in the complaint, including the specific paragraphs that include him within the definition of

Released Parties who could have claims against them potentially released under the plan.

Complaint, Par. 61-63.  He then alleged that, as one of the "Released Parties," he is a

"beneficiary" of the release and injunction provisions.  Complaint, Par. 64.  He also quoted part

of the definition of "Released Claims," but he never stated how the Kelleher Loan falls within

that definition.  He simply declared that the NALM Parties' claims based on the Kelleher Loan

"constitute Released Claims" under the plan.  Complaint, Par. 68.  Thus, neither Kelleher's

response to the motion nor the complaint explain how the Kelleher Loan is a "Released Claim"

that otherwise falls within the release and injunction provisions.  For good reason:  analysis of

the relevant plan language leads only to the opposite conclusion - that they do not apply to the

Kelleher Loan.


A.    Release Provision

> Section 7.4 of the Shelbourne plan is entitled "Discharge and Release."  It provides that

"Released Parties," a term defined in the plan that includes Kelleher,[1] are released from "any and

---

[1]"Released Parties" is defined in Paragraph 1.76 of the plan to include the "Shelbourne
Affiliates," which is defined in Paragraph 1.87 to include Garrett Kelleher.

all *Claims* and Interests of any kind . . . ," including but not limited to a long litany of specific

kinds of claims under the Bankruptcy Code.  It then states:  "the rights provided in this Plan shall

be in complete . . . (y) satisfaction, discharge and release of all *Claims* constituting *Released

Claims*," including but not limited to another litany of types of claims.  Plan, Par. 7.4 (emphasis

added).  Finally, it provides, in all capital letters (that will not be used here for ease of reading),

the following:

> Further, but in no way limiting the generality of the foregoing, except as otherwise
> specifically provided in the Plan, an *entity accepting any distributions or rights* pursuant
> to this plan shall be presumed conclusively to discharge the debtor and reorganized
> debtor and have released the Released Parties from (a) the *Released Claims* and (b) any
> other cause of action based on the *same subject matter as the Claim or Interest on which
> the distribution or right is received*.

Plan, Par. 7.4 (emphasis added).

The two terms that determine the claims covered by this release provision are "Released

Claims" and "Claim," both of which are defined in the plan.  "Released Claims" is defined in

Paragraph 1.75 as:

> any and all *Claims*, whether at law or equity, against the Released Parties, including,
> without limitation, Avoidance Actions, the *Claims*, and all Causes of Action, whether
> known or unknown, either directly, indirectly or derivatively *through the Debtor or
> Reorganized Debtor on the same subject matter as any of the Claims, Interests, or Liens
> on the Debtor's Property,* but not including . . . .

Plan, Par. 1.75.  By defining "Released Claims" as "any and all Claims," the definition requires

that a "Released Claim" must be a "Claim" in the first place.  "Claim" is defined in Paragraph

1.23 of the plan as "any 'claim' *against the Debtor* as defined in Section 101(5) of the

Bankruptcy Code." (emphasis added).  Under these two definitions, a "Released Claim" must be

a "claim against the Debtor."  While the definition of "Claim" in the plan incorporates the broad

definition of a "claim" in the Bankruptcy Code, the key limiting phrase in the definition of

9

"Claim" in the plan is that it must be a "claim *against the debtor*."  Plan, Par. 1.23 (emphasis

added).  Released Claims are, therefore, first and foremost *claims against the debtor*.

After limiting "Released Claims" to "any and all Claims . . . against Released Parties,"

the definition then provides three examples of types of "Claims" in the "including without

limitation" phrase.  It first refers to "Avoidance Actions," a defined term not relevant here, then

it redundantly repeats "Claims," and finally it refers to certain types of "Causes of Action."

"Causes of Action" is another defined term that includes a long list of possible claims that arose

before the effective date of the plan.  Plan, Par. 1.21.  This definition is not expressly limited to

claims against the debtor.  It is not clear how the definition of "Causes of Action" differs from

the definition of "claim" in § 101(5) of the Bankruptcy Code that is incorporated into the

definition of "Claim" in the plan.  Whatever was intended by referring to Causes of Action as an

example of a "Claim," however, the term is expressly limited by two key phrases in Paragraph

1.75.  The "Causes of Action" included in "Released Claims":  (1) must be owed "either directly,

indirectly or derivatively through the Debtor or Reorganized Debtor" and (2) must be "on the

same subject matter as any of the Claims, Interests or Liens on the Debtor's Property."  Plan,

Par. 1.75.  This language makes it clear that the "Causes of Action" that fall within "Released

Claims" must arise from debts owed by the debtor (or reorganized debtor) in some way -

directly, indirectly, or derivatively, thus bringing the definition back to the initial limitation to

"Claims" against the debtor.  The "Claims" included must also be on the "same subject matter"

as a claim, "Interest,"[2] or lien on property of the debtor.[3]  So while this definition of "Released

Claim" is poorly drafted, it clearly limits Released Claims to those arising from claims against

the debtor.      Under these definitions, there is no reasonable basis for contending that a debt

owed solely by Kelleher that is not secured by property of the debtor is a "Released Claim."

While Kelleher falls within the definition of a Released Party, this does not release him from any

claim in the world against him, or even any claim against him that is somehow related to

Shelbourne.  It releases him only of personal liability, presumably under a guaranty, on claims

owed by the debtor.

    The limited scope of Released Claims is also reflected throughout the long and tortured

language of the release provision in Paragraph 7.4 of the plan.[4]  The first sentence of

---

[2]"Interest" is defined in the plan as "any partnership interest in the Debtor."  Plan, Par.
1.52.

[3]It should be noted that claims against property of the debtor are claims against the
debtor.  *See, e.g., Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154 (1991) (a
lien against the debtor's property that survives a chapter 7 bankruptcy is a claim against the
debtor in his subsequent bankruptcy).  So while claims against the debtor and claims or liens
against property of the debtor are listed separately in the definition of Released Claims and in the
release and injunction provisions, they both fall within the definition of "Claim" in the plan.

[4]The full text of Paragraph 7.4 is as follows:

7.4   <u>Discharge and Release</u>.  Except as specifically provided in this plan or in the
       Confirmation Order, effective on the Effective Date, the Released Parties shall be
       discharged from responsibility, obligation or liability for any and all Claims and
       Interests of any kind or nature whatsoever, including but not limited to, demands
       and liabilities that arose before the Confirmation Date, and all debts of the kind
       specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or
       not (i) a Proof of Claim based on such Claim was filed or deemed filed under
       section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of
       the Debtor, (ii) such Claim is or was Allowed under Section 502 of the
       Bankruptcy Code, or (iii) the Holder of such Claim has voted on or accepted this
       Plan.  Except as specifically provided in this Plan or Plan Documents to the
       contrary, the rights provided in this Plan shall be in complete (x) satisfaction,

Paragraph 7.4 defines the general scope of the release, providing that it covers "any and all

*Claims* and Interests of any kind or nature whatsoever." Thus, the limitation to "Claims" -

which are only claims against the debtor - is included in the broadest statement of the scope of

the release, consistent with the definition of "Released Claims." The first sentence of Paragraph

7.4 then states that these "Claims" released include but are not limited to "all debts of the kind

specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code," which are all claims that

can be made by a creditor against the debtor. It next provides that these "Claims" are released

regardless of whether the claim was allowed under § 502 of the Bankruptcy Code or whether the

holder of the claim voted on or accepted the plan. Again, only a creditor of the debtor (or an

interest holder) would have a claim allowed under § 502 and would have the right to vote and get

a distribution under a plan.

---

discharge and release of all Claims or demands against, Liens on, and Interests in
the Debtor (or the Reorganized Debtor), or the assets and properties of the Debtor
(or Reorganized Debtor), including the Property, (y) satisfaction, discharge and
release of all Claims constituting Released Claims, including but not limited to,
all Causes of Action, whether known or unknown, either directly, indirectly or
derivatively through the Debtor or Reorganized Debtor against the Released
Parties or on the Property on the same subject matter as any of the Claims, Liens,
or Interests described in subpart (x) of this Section 7.4, and (z) satisfaction,
discharge and release of all causes of action of the Debtor or Reorganized Debtor,
whether known or unknown, including but not limited to all Claims including the
Released Claims,, against the Released Parties. FURTHER, BUT IN NO WAY
LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS
OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ANY ENTITY
ACCEPTING ANY DISTRIBUTIONS OR RIGHTS PURSUANT TO THIS
PLAN SHALL BE PRESUMED CONCLUSIVELY TO DISCHARGE THE
DEBTOR AND REORGANIZED DEBTOR AND HAVE RELEASED THE
RELEASED PARTIES FROM (A) THE RELEASED CLAIMS AND (B) ANY
OTHER CAUSE OF ACTION BASED ON THE SAME SUBJECT MATTER
AS THE CLAIM OR INTEREST ON WHICH THE DISTRIBUTION OR
RIGHT IS RECEIVED.

Paragraph 7.4 then provides in a very long second sentence that "*the rights provided in this plan* shall be (x) in complete satisfaction, discharge, and release of all Claims or demands, Liens on, and Interests in the debtor ... or the assets and properties of the Debtor ..., including" the Chicago Spire property.  Thus, it is the "rights provided in this plan" that satisfy and cause the release of the "Released Claims," so only parties receiving rights under the plan could be bound.  And once again, the release applies only to "Claims" against the debtor, interests in the debtor, and liens on property of the debtor.

The next release in clause (y) refers specifically to "Released Claims" and "Released Parties."  As with clause (x), it is the "rights provided in this plan" that satisfy and cause the release of the claims described in clause (y).  So clause (y) applies only to parties who receive rights under the plan.  Clause (y) provides that the claims released by parties receiving rights under the plan are "all Claims constituting Released Claims," so clause (y) is expressly limited to "Claims" against the debtor.  It then gives examples of the Released Claims in yet another "including but not limited to" clause that uses language similar to the language in the definition of Released Claims:  "including but not limited to all Causes of Action, whether known or unknown, either directly, indirectly or derivatively through the Debtor or Reorganized Debtor against the Released Parties or on the Property on the same subject matter as any of the Claims, Liens, or Interests described in subpart (x) of this Section 7.4 . . . ."  Thus, the "Claims" that are "Released Claims" to which the release in (y) applies must be owed by the debtor (including claims against property of the debtor) and be "on the same subject matter"  as the claims and interests described in clause (x).  And as discussed above, the claims and interests described in clause (x) are claims against the debtor (including claims against property of the debtor) and

13

interests in the debtor.   Clause (y) is therefore limited in multiple ways to claims against the debtor and interests in the debtor.[5]

Finally, Paragraph 7.4 concludes with language in all capital letters providing that any entity accepting any distributions or rights under the plan is "presumed conclusively to discharge the debtor . . . and have released the Released Parties from (A) the Released Claims and (B) any other cause of action based on the same subject matter as the Claim or Interest on which the distribution or right is received."  This sentence reinforces that the release provision only requires parties who received distributions under the plan to release Released Claims, which must be claims against the debtor or its property.  The last clause in all capital letters is curious. It suggests that claims could be released that do not fall within the definition of "Released Claims," but even then only from causes of action "based on the same subject matter as the Claim or Interest on which the distribution or right is received."  Thus, even this potential "add-on" to the definition of a Released Claim is expressly tied to "Claims" and "Interests" in the debtor for which the releasing party is receiving a distribution of money or rights under the plan. Every clause in Paragraph 7.4 reflects the fundamental limitation of the release:  it applies only against  creditors or interest holders who are receiving distributions or rights under the plan.

Kelleher failed to offer any interpretation of the definitions of "Released Claim" and "Claim" or the language in Paragraph 7.4 under which the Kelleher Loan falls within these provisions.  The Kelleher Loan is not a "Claim" against the debtor, and therefore it is not a

---

[5]Clause (z) of Paragraph 7.4 also refers to Released Parties and Released Claims, but it releases the only *the debtor's* and the reorganized debtor's causes of action against the Released Parties.  The inconsistencies in this clause need not be addressed because clause (z) does not apply here.

"Released Claim" that could possibly fall within the release in Paragraph 7.4.  NALM received

no rights under the plan that could trigger the "satisfaction, discharge and release" language in

clauses (x), (y), or (z) of the provision.  And the Kelleher Loan did not arise "either directly,

indirectly or derivatively through the debtor" and is not "on the same subject matter as any of the

Claims, Liens or Interests described in subpart (x)," as required in clause (y) of the release

provision.  There is no reasonable basis for Kelleher's assertion that the release provision applies

to the Kelleher Loan.


  B.  <u>Injunction Provision</u>

  The injunction provision in the plan is similarly limited to claims against the debtor, its

property, and interests.  Paragraph 7.5 of the plan, entitled "Discharge Injunction," enjoins

anyone from trying to collect on any "Claim" or interest from the Released Parties.  It provides

that the plan will operate as a permanent injunction of any act to collect "any Claim or demand"

against the released parties.  Like the release provision, Paragraph 7.5 is poorly drafted with

many redundant provisions.[6]  It contains three clauses that describe the claims to be enjoined,

---

[6]Paragraph 7.5 of the plan provides in full as follows:

  7.5 <u>Discharge Injunction</u>     Except as specifically provided in the Plan
Documents to the contrary, upon entry of the Confirmation Order, this Plan will operate
as a permanent injunction prohibiting and enjoining the commencement or continuation
of any action, the employment of process or any act to collect, recover from, or offset (a)
any *Claim* or demand against or equity Interest in the Released Parties by any Entity, (b)
any *Claim* or demand, whether known or unknown, against the Released Parties by any
Entity, based on the same subject matter as any *Claim*, demand or Interest described in
Section 7.4, including without limitation, any guaranties by Released Parties of any such
*Claims*, demands or Interests, or (c) any *Claim* or demand against, any security interest in
or any lien, claim or encumbrance on the Property by any Entity.   BY ACCEPTING
DISTRIBUTIONS PURSUANT TO THIS PLAN, EACH HOLDER OF AN ALLOWED

each of which is limited primarily to "Claims" and, therefore, to claims against the debtor.

Clause (a) enjoins any effort to collect on "any Claim, demand or equity Interest in the Released

Parties by any Entity."  A "Claim" is only a claim against the debtor and an Interest is a

partnership  interest in the debtor.  Clause (b) refers to "any Claim or demand . . . against the

Released Parties by any Entity, based on the same subject matter as any Claim, demand or

Interest described in Section 7.4, including without limitation any guaranties by released Parties

of any such Claims, demands or Interests."  This phrase also limits the claims covered to

"Claims" and, therefore, to claims against the debtor.  It further limits the injunction to claims

covered in the release provision, and specifically mentions guarantees given by released parties.

Clause (c) refers to claims against property of the debtor, which are claims against the debtor.

The Kelleher Loan, which does not involve a claim against the debtor or an interest in the debtor,

does not fall within any of these three clauses.

Like Paragraph 7.4, the injunction provision ends with sentences in all capital letters

(omitted here) that reinforce the limited nature of the injunction.  The first sentence in capital

letters provides:

> By *accepting distributions pursuant to this plan*, each *holder of an allowed Claim or Interest* will be deemed to have specifically consented to this injunction.

Plan, par 7.5 (emphasis added).  The clear import of this sentence is that the injunction applies

---

CLAIM OR INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY
CONSENTED TO THIS INJUNCTION.   ALL INJUNCTIONS OR STAYS
PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF
THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE
CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL
THE EFFECTIVE DATE.

Plan, Par. 7.5 (italics added).

only to parties who accept distributions under the plan. Only a holder of an allowed claim or interest would get a distribution under the plan and could therefore be bound by the injunction. As noted above, the NALM Parties were not creditors of the debtor, they held no interests in the debtor, they were not entitled to vote on the plan, and they received no distribution under the plan. Therefore, the injunction could not apply to them.[7]

In fact, for the injunction to apply to the NALM Parties and the Kelleher Loan, the injunction provision and the disclosure statement must have clearly identified NALM as a party bound by it and the Kelleher Loan as a claim to which it applied. Rule 3016(c) of the Federal Rules of Bankruptcy Procedure requires that if a plan contains an injunction against conduct not otherwise enjoined by the Bankruptcy Code, both the plan and the disclosure statement must "describe in *specific and conspicuous language* (bold, italic, or underlined text) *all acts to be enjoined* and *identify the entities that would be subject to the injunction."* Fed. R. Bankr. P. 3016(c) (emphasis added). The plan and disclosure statement do neither. The NALM Parties are not identified anywhere in the plan or the disclosure statement. They are not creditors or interest holders and did not receive any distribution or rights under the plan, so they could not be "identified" generically as creditors, interest holders or other "entities" receiving distributions under the plan. And the Kelleher Loan is not even mentioned in the disclosure statement or the plan so collecting on it has not been identified as an act to be enjoined. It is abundantly clear, therefore, that the Kelleher Loan was not covered by the release or injunction.

It is not surprising, then, that Kelleher made no attempt to parse the language of the plan

---

[7]In fact, the injunction would not apply to the Kelleher Loan even if the NALM Parties had been creditors holding claims against the debtor because the debtor had no liability for the Kelleher Loan and it was not secured by property of the debtor or an interest in the debtor.

17

to support his claim that the release and injunction provisions apply to the Kelleher Loan.  The

court warned Kelleher and his counsel during the December 17, 2015 hearing that he would need

a "straight line" connecting the Kelleher Loan to the release and injunction provisions to have

any chance of success in the adversary proceeding.  The court specifically referred to the

definitions of "Claim" and "Released Claims" that appeared to exclude the Kelleher Loan.

Kelleher therefore knew that he would need to cite specific language in the plan that

demonstrated that the Kelleher Loan fell within those definitions and the language of the release

and injunction provisions.  By failing to address the plan language in his response, Kelleher has

essentially conceded that there is no reasonable argument under which the Kelleher Loan falls

within the release and injunction provisions.


    C.    Kelleher's Arguments

    Instead of making any argument based on specific language in the plan, Kelleher makes a

number of other arguments in his response, none of which affects the court's analysis of the

release and injunction provision.


        1.    Timeliness of the Motion

    First, Kelleher argues that the motion for sanctions is untimely because it was not filed

"promptly after the inappropriate paper" was filed.  The NALM Parties respond that the motion

is timely under controlling Seventh Circuit authority.  The court agrees.

    Rule 9011(c)(1)(A) provides that the moving party must give the challenged party 21

days from service of the motion to withdraw the pleading at issue before presenting the motion

18

to the court.  This is known as the "safe harbor" provision, which gives a  party time to decide

whether to withdraw the document at issue.  The 21 day window is a floor, not a ceiling.  *See*

*Matrix VI, Inc. v. American Nat'l Bank and Trust Co.*, 649 F.3d 539, 552 (7th Cir. 2011).  The

Seventh Circuit has also held that "90 days from the date of entry of final judgment represents

'the outer parameters of the timeliness for sanctions claims.'"  *Sullivan v. Hunt*, 350 F.3d 664

(7th Cir. 2003) (quoting *Kaplan v. Zenner*, 956 F.2d 149 (7th Cir. 1992)).

   The NALM Parties filed their motion for sanctions within these two time limits.  Kelleher

filed his complaint on July 29, 2015.  Approximately one month later, counsel for the NALM

Parties served the draft motion for sanctions on Kelleher's counsel.  Kelleher voluntarily

dismissed the complaint on January 15, 2016.  The motion for sanctions was filed on February 3,

2016.  The NALM Parties filed their motion 19 days after the case was dismissed, so they

complied with both the safe harbor minimum time limit and the 90 day outer time limit.  *See*

*Matrix VI, Inc.*, 649 F.3d at 552 - 553 (a party who sent a warning letter two weeks after the

complaint was filed and filed a motion for sanctions two years later, 23 days after the case was

dismissed, complied with Rule 11).  The motion is timely.


   2.       "Existing Law" regarding Plan Injunctions

   Second, Kelleher states that the NALM Parties seem to contend that the complaint was

frivolous because the plan injunction could not, as a matter of law, have enjoined NALM, as a

non-creditor, from suing Kelleher, a non-debtor.   Kelleher then argues that existing law would

indeed permit such an injunction.  The court need not resolve this theoretical issue because the

plan does not in fact release or enjoin collection of the Kelleher Loan for all the reasons

discussed above.

The court notes, however, that the two cases cited by Kelleher would not permit the enforcement of the release and injunction against the NALM Parties in this case. The first case cited, *In re Airadigm Communications, Inc.*, 519 F.3d 640 (7th Cir. 2008), addressed only whether a plan could release the claim of a creditor against a non-debtor when the creditor objected to the release. It did not discuss whether a plan could release a claim of a non-creditor against a non-debtor.

In the second case cited by Kelleher, *In re Ingersoll, Inc.*, 562 F.3d 856 (7th Cir. 2009), the court acknowledged that there may be unusual circumstances in which a non-debtor could be released from liability to a non-creditor when the release is specifically provided for in the plan. The court cautioned, however, that such releases are not "always - or even normally - valid" and that most will not "pass muster." 562 F.3d at 865. The court also required that a party whose claim is extinguished must receive "fair notice and an opportunity to object." *Id.*[8]

In this case, neither the plan nor the disclosure statement even mentioned the Kelleher Loan, let alone gave a clear notice that it would be released in the plan. As noted above, the NALM Parties were not creditors, they had no right to vote or object to the plan, and they received no distribution under the plan. They had no reason to believe they could be barred from collecting the Kelleher Loan under either provision in the plan and, therefore, no reason to object to it before confirmation. In these circumstances, none of the requirements for releasing or enjoining claims of non-creditors against non-debtors could even possibly be met. Whether it

---

[8]The release provision in the plan in *Ingersol* specifically identified both the non-debtor and non-creditor parties who would be bound and the lawsuits from which the claims covered arose. 562 F.3d at 862.

might have been possible to include the Kelleher Loan within the release and injunction

provisions of the plan with proper notice and an opportunity to object is irrelevant.


     3.  <u>Why Statements Were Sent to Kelleher at U.S. Address</u>

  Kelleher next takes issue in his response with the NALM Parties' explanation of why

they began sending notices to Kelleher at his address in the U.S.  This issue makes no difference

here.  The plan does not bind the NALM Parties in connection with the Kelleher Loan, so the

reason that notices were sent to the U.S. is irrelevant.


     4.  <u>Settlement Agreement in Shelbourne Bankruptcy Case</u>

  Kelleher also refers in his response to a settlement agreement entered into by the debtor,

various Shelbourne entities, RMW, and Kelleher (the "Settlement Agreement").  He makes no

specific argument based on the Settlement Agreement, but he suggests that it supports his

contention that the Kelleher Loan falls within the release and injunction provisions.  NALM was

not a party to the Settlement Agreement.  It contains one provision under which the debtor and

the "Debtor Affiliates" agree to waive any claims they have against NALM and not to sue it

regarding the "Mortgage Debt."  Settlement Agreement, Ex. D to Kelleher Response Brief, Par.

22.  Kelleher is included in the definition of "Debtor Affiliates," but "Mortgage Debt" refers to

the debt owed by the debtor on loans made to it by Anglo Irish Bank, *i.e.*, the Shelbourne Loans.

Settlement Agreement, Par. CC, G.  This provision has nothing to do with the Kelleher Loan,

which is not owed to RMW, is not secured by property of the debtor, and is not mentioned at all in the Settlement Agreement.

In fact, far from supporting Kelleher's argument that the release and injunction provisions apply to the Kelleher Loan, the Settlement Agreement supports the opposite conclusion:  the plan  does not release the Kelleher Loan.  As Kelleher alleged in the complaint, the Amended Joint Chapter 11 Plan filed by the debtor "implemented" the terms of the Settlement Agreement.  Complaint, Par. 58 - 59.   The Second Amended Joint Plan was ultimately confirmed.  Order Confirming Plan, entered October 7, 2014 (Docket No. 327).  Paragraph W of the "Whereas" clause of the Settlement Agreement provides that the debtor will file an amended plan and disclosure statement consistent with the terms of the agreement.  Paragraph 7 states that the debtor will file a motion to approve the agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure in the bankruptcy court on or before March 19, 2014.  Paragraph 8 provides that the debtor will then file an amended plan that will be a joint plan proposed by the debtor and the RMW Entities consistent with the terms of the Settlement Agreement.  The order confirming the plan also expressly provides that the plan implements the terms of the Settlement Agreement.   Order Confirming Plan, entered Oct. 7, 2014, Par. F (Docket No. 327).  Thus, the Settlement Agreement formed the basis for the joint amended plan proposed by the debtor and the RMW Entities that was confirmed by the court.

The Settlement Agreement expressly identifies the loans that are the subject of the agreement and the joint plan in Paragraphs G and H of the recitals section (pages 3-4).   The Kelleher Loan is not mentioned there or anywhere else in the Settlement Agreement.  The agreement determines who will be paid how much under the joint plan and then specifically

provides for the releases to be included in the proposed plan.  Paragraph 18 of the Settlement

Agreement calls for "Mutual Releases," providing that the RMW Entities, the Debtor, the Debtor

Affiliates (which include Kelleher), and Atlas "shall exchange broad general releases of any and

all claims counterclaims . . . and causes of action . . . ."  Thus, the releases contemplated by this

paragraph are only to be "exchanged" among the parties to the agreement and arise from the loan

and other agreements identified in the Settlement Agreement.  They could not possibly release

the claim of NALM against Kelleher for the Kelleher Loan because NALM was not a party to

the agreement.

Paragraph 19, entitled "Further Kelleher Releases," then specifically addresses "further"

releases Kelleher will receive.  It states that, subject to the various payments to be made to RMW

under the Settlement Agreement and proposed plan, "the RMW Entities" agree that they will not

attempt to enforce any judgment "obtained in connection with any guaranties made by Kelleher"

and that any such "judgments will be extinguished" and the "guaranties released."  It continues:

> For the avoidance of doubt, the guaranties being released shall include, but not be limited
> to, the guaranties provided to the Bank and Case.  Furthermore, upon entry of the 9019
> Order, RMW will release Kelleher from his obligations under any guaranty by Kelleher
> related solely to the Mortgage Debt.

Settlement Agreement, Par. 19.[9]   Thus, this paragraph provides that Kelleher will be released

only from "guaranties" of debts owed by the debtor.

---

[9]"Bank" is defined in the Settlement Agreement as Anglo Irish Bank Corporation, who
made the original loan to the debtor that was transferred to NALM, who transferred it to RMW.
Thus, the guaranty to the "Bank" appears to be the same as the same one held by RMW when the
Settlement Agreement was entered, that is the subject of the final sentence in this paragraph.
"Case" refers to Case Foundation Company, with whom the debtor entered into an agreement as
described in Paragraph J of the agreement that was guaranteed by Kelleher.

Nothing in Paragraphs 18 or 19 could arguably include the Kelleher Loan in the releases to be provided under the Settlement Agreement or the plan.  The definition of Released Claims and the release and injunction provisions are entirely consistent with the release provisions in the Settlement Agreement:  they release only guaranty claims or other claims that may exist between the parties to the Settlement Agreement.  Neither the Settlement Agreement on which the plan was based nor the plan itself provide for the release of or an injunction against collection of the Kelleher Loan.

5.    Arguments Suggested in Complaint

Finally, because the court is always reluctant to impose sanctions unless they are clearly warranted, it has carefully examined the allegations in the complaint to search for justifications for it that Kelleher has not identified in his response to the motion.  Two arguments are suggested by the allegations, neither of which has merit.

The first is that NALM's intervention in the bankruptcy case for the limited purpose of protecting its confidential information was sufficient to bind NALM to the terms of the plan, even though it was not a creditor, had no right to vote on the plan, and received nothing under the plan.  Kelleher's counsel suggested in court on December 17, 2015 that this involvement in the bankruptcy case is a potential justification for concluding that the release and injunction apply to NALM regarding the Kelleher Loan.  As the court noted at the December 17 hearing, this argument has no merit.  The court granted NALM's motion to intervene in the bankruptcy case "for the limited purposes described in the motion," which were to protect its confidential

24

information.  Order entered March 5, 2015 (docket No. 157).   This limited appearance did not

transform NALM into a creditor who could be bound by a plan, and it could not transform the

Kelleher Loan into a claim released in the plan.

Second, Kelleher alleges in the complaint that the Kelleher Loan was secured in part with

Kelleher's interest in Milltown LLC.   Milltown LLC is not the debtor or property of the debtor,

and an interest in Milltown LLCC is not an interest in the debtor, so this security interest in

Kelleher's interest in Milltown has no impact on the conclusion that the release and injunction in

the plan do not apply to the Kelleher Loan.

D.    Rule 9011 Sanctions Warranted

Kelleher has not proffered any reasonable basis for his claim that the release and

injunction in the plan apply to the Kelleher Loan.  The court finds that there was no basis in law

or fact for Kelleher's assertion that these provisions barred collection of the Kelleher Loan, and

that the probability of success on the merits of the complaint was extremely low.  The complaint

was therefore frivolous for purposes of Rule 9011.  The NALM Parties have met their burden of

establishing that Kelleher's complaint violated Rule 9011.

The NALM Parties assert that the appropriate sanction for the violation of Rule 9011 is

an award in the amount of the attorneys' fees they incurred in defending against the complaint.

Kelleher argues that attorneys' fees should be awarded only in rare cases under Rule 9011.  This

is not correct.  Rule 9011(c)(4) provides that the court may impose the sanction of the reasonable

attorney's fees and expenses of the moving party "if imposed on motion and warranted for

effective deterrence."  *See Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1029, 1030 (7th Cir. 1999).

The court has significant discretion in determining the appropriate sanction in a particular case. *See* 1993 Advisory Committee Note for Rule 11.

Here, Kelleher and Joseph Frank, his counsel who signed the complaint, were central players for the debtor in the Shelbourne bankruptcy. Kelleher was the principal of the debtor and Mr. Frank was counsel for the debtor. Both knew that the Kelleher Loan did not fall within the release or injunction provisions of the plan. In addition, Mr. Frank, an experienced chapter 11 practitioner, should have been well aware of what would have been necessary to even attempt to include a loan owed solely by a non-debtor to a non-creditor in a plan release and injunction. Both Kelleher and Frank chose to file this adversary anyway, apparently to throw up improper roadblocks to the NALM Parties' collection efforts. This type of conduct imposes unfair costs on the targets of the litigation and unnecessarily burdens the courts. To effectively deter such behavior, the offending parties should be required to pay the costs they imposed on their opponents. The court will therefore require Kelleher and Mr. Frank to pay the NALM Parties' reasonable attorneys' fees and costs of defending this case.

### E.   Sanctions under § 1927

The NALM parties also seek sanctions under 28 U.S.C. § 1927. It provides for imposing sanctions, including attorneys' fees, on any party or attorney who vexatiously "multiplies the proceedings" as follows:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

26

28 U.S.C. § 1927.

There is some disagreement among courts regarding whether bankruptcy courts have the authority to impose sanctions under § 1927. *See Regensteiner Printing Co. v. Graphic Color Corp.*, 142 B.R. 815 (Bankr. N.D. Ill. 1992) (bankruptcy court does not have authority); *In re Raymond Prof'l Group, Inc.*, 420 B.R. 448 (Bankr. N.D. Ill. 2009) (bankruptcy court does have authority). The Seventh Circuit has not ruled on this issue. *See In re Volpert*, 110 F.3d 494, 500 (7th Cir. 1997).

The court need not resolve this issue, however, because Kelleher and his counsel did not violate this statute. Although there is some overlap in the language and intent of § 1927 and Rule 9011, § 1927 is aimed more squarely at a type of behavior that has become all too familiar in federal courts - a "serious and studied disregard for the orderly process of justice . . . ." *The Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). Examples of this are filing multiple motions for reconsideration and amended pleadings, adopting shifting versions of the facts, and ignoring court orders. *Id.; s*ee also *Lightspeed Media Corp. v. Smith*, 761 F.3d 699 (7th Cir. 2014). Although the complaint was frivolous, Kelleher and his counsel have not filed multiple motions, ignored court orders, or otherwise tried to "multiply the proceedings." The court therefore finds that Rule 9011 provides the most appropriate basis for redress in this case and that sanctions under § 1927 are not warranted.

IV.    Conclusion

The NALM Parties' motion for sanctions under Rule 9011 against Kelleher and Joseph Frank is granted. Kelleher and Frank must pay the NALM Parties' reasonable attorneys' fees

incurred in opposing the complaint.  They will be held jointly and severally liable to pay the

sanctions award.  To the extent that the motion seeks sanctions under § 1927, however, it is

denied.  The court will set a schedule for determining the amount of sanctions to be awarded by

separate order.

Dated: April 28, 2016

ENTERED:

Carol A. Doyle
United States Bankruptcy Judge