## IN THE UNITED STATES BANKRUPTCY
## COURT FOR THE NORTHERN DISTRICT OF
## ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Shelbourne North Water Street L.P., | ) | Case No. 13 B 44315 |
| | ) | |
| Debtor. | ) | |
| ———————————————— | ) | |
| | ) | |
| Garrett Kelleher, | ) | |
| Plaintiff, | ) | Adversary No.  15 A 00544 |
| v. | ) | |
| | ) | |
| National Asset Loan Management, Ltd. | ) | |
| and Capita Asset Services (Ireland) | ) | |
| Limited, | ) | Honorable Carol A. Doyle |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION</u>

Garrett Kelleher filed this adversary proceeding against National Asset Loan

Management, Ltd. ("NALM") and Capita Asset Services (Ireland) Limited ("Capita") alleging

that they are barred under provisions in the confirmed chapter 11 plan of Shelbourne North

Water Street, L.P. from collecting on a personal loan made to Kelleher.  NALM and Capita

(collectively the "NALM Parties") filed a motion to dismiss the complaint and then a motion for

a protective order.  Before either motion was decided, Kelleher voluntarily dismissed the

complaint without prejudice.  The parties have now reached an agreement under which:  (1)

Kelleher will withdraw his notice of voluntary dismissal, and (2) the parties have asked the

court to substitute this Memorandum Opinion dismissing the adversary proceeding for a

previous Memorandum Opinion issued by the court.   In accordance with the agreement of the

1

parties, the court will vacate its previous opinion and dismiss the complaint for failure to state a

claim.  The fundamental issue in this case is whether release and injunction provisions in the

Shelbourne plan apply to debts owed by Kelleher, who was not a debtor, to the NALM parties,

who were not creditors of Shelbourne.  The answer is no:  the Shelbourne plan did not affect

Kelleher's personal liability to the NALM parties.


I.    Background

    A.    The Loans and Shelbourne Bankruptcy Case

Shelbourne North Water Street, L.P. ("Shelbourne" or "debtor") was formed to own

a parcel of real estate in Chicago and develop a building on it known as the Chicago Spire.

Kelleher was the principal of Shelbourne.  Shelbourne borrowed approximately $69 million

from the Anglo Irish Bank Corporation, Ltd. for the project (the "Shelbourne Loans").  The

loan was secured by Shelbourne's Chicago Spire property and was personally guaranteed by

Kelleher. Kelleher also personally borrowed another $6.1 million for the project that was

secured by interests he held in another limited liability corporation (Milltown, LLC) and other

personal assets (the "Kelleher Loan").  Shelbourne was not a party to the Kelleher Loan

transaction in any way:  it did not sign the note, it did not guarantee the loan, and none of its

assets were used as collateral.  Kelleher used the Kelleher Loan proceeds, however, to pay

expenses related to Shelbourne.

In June 2010, a mechanics lien creditor of Shelbourne filed a foreclosure action in the

Circuit Court of Cook County.  In October 2010, Anglo Irish Bank filed a counterclaim in the

foreclosure case to collect on the Shelbourne Loans.  In 2011, Anglo Irish Bank was merged

into the Irish Bank Resolution Corporation ("IBRC").  The IBRC assigned the Shelbourne

Loans and the Kelleher Loan to NALM, which had been formed to acquire, hold, and manage

loan assets. NALM then substituted into the foreclosure case for Anglo Irish Bank.  In June

2013, NALM transferred the Shelbourne Loans and Kelleher's guaranty of those loans to

RMW Acquisition Company, but it retained the Kelleher Loan.  RMW intervened in the

foreclosure case.

In October 2013, RMW and other creditors of Shelbourne filed an involuntary petition

under chapter 11 against Shelbourne in the bankruptcy court for the District of Delaware.  In

November 2013, the case was transferred to the bankruptcy court in this district.  RMW was

the principal secured creditor in the Shelbourne bankruptcy case.  NALM was not a creditor in

that case because it transferred the Shelbourne Loans to RMW and retained only the Kelleher

Loan, on which the debtor had no liability.  In October 2014, the court confirmed a second

amended joint chapter 11 plan of reorganization proposed by the debtor and RMW, which

implemented a settlement agreement entered into by the debtor, RMW, Kelleher, and others

(but not NALM). The plan contains release and injunction provisions that are at the center of

this case.

B.    The Adversary Proceeding

In July 2015, Kelleher filed this adversary proceeding against the NALM Parties

seeking a declaratory judgment that the release and injunction provisions in the Shelbourne

plan bar them from collecting on the Kelleher Loan from Kelleher.  He alleged that he is

included in the definition of "Released Parties" under the plan and that the release and

injunction provisions apply to the Kelleher Loan.  He did not explain how the Kelleher Loan,

which is a debt owed solely by a non-debtor to a non-creditor, falls within the claims covered

by the release and injunction.

3

Instead, Kelleher alleged that the funds obtained from the Kelleher Loan were paid directly to vendors for goods and services provided to Shelbourne in connection with development of the Chicago Spire.   He also alleged that NALM "participated" in the Shelbourne bankruptcy, even though it no longer owned the Shelbourne Loans, because NALM intervened in the bankruptcy case for the limited purpose of protecting the confidentiality of information that had been sealed in the state court foreclosure action.  He further alleged that NALM "participated" in settlement negotiations that led to entry of a settlement agreement among the debtor, RMW, Kelleher, and others that formed the basis for the joint plan that was ultimately confirmed.  Based primarily on these allegations, Kelleher asserted that the release and injunction in the Shelbourne plan barred the NALM Parties from collecting on the Kelleher Loan.  Kelleher then alleged that Capita sent loan statements to Kelleher at his residence in the U.S. seeking payment of the Kelleher Loan in violation of the release and injunction.

Kelleher sought a declaratory judgment determining that the Kelleher Loan was released and discharged by the Shelbourne plan and that all collection actions against him were enjoined. He also sought actual and punitive damages for the NALM Parties' allegedly willful violation of the injunction contained in the plan and confirmation order.

On October 2, 2015, the NALM Parties filed a motion to dismiss for lack of subject matter jurisdiction and personal jurisdiction.   In light of the recent agreement of the parties, the court will treat the NALM parties' motion as one to dismiss for failure to state a claim upon which relief can be granted relief.   The complaint fails to allege a plausible claim that

4

the Shelbourne plan released and enjoined collection of debts owed by Kelleher to NALM. [1]

II.    The Plan

The NALM Parties contend that the language of the relevant definitions, the release

provision, and the injunction provision in the Shelbourne plan makes it clear that the Kelleher

Loan does not fall within either the release or the injunction.  They also argue that they could

not be bound by the plan even if the plan proponents had attempted to include the Kelleher

Loan within the release and injunction because:  (1) they did not receive notice that the debtor

intended to enjoin them, (2) they did not receive proper service of the plan, (3) they were not

creditors in the Shelbourne bankruptcy case, (4) they were not permitted to vote on the plan,

and (5) they did not receive a distribution under the plan.

In his response, Kelleher fails to explain how the plan language applies to release his

liability to NALM on the Kelleher Loan.  Instead, he contends that a chapter 11 plan could

potentially release a claim owed by a non-debtor to a non- creditor, and he challenges some

factual allegations in the motion regarding why Capita began sending loan notices to his

address in the U.S.  But Kelleher provides no analysis of the relevant plan language that could

provide a reasonable justification for his assertions in the complaint.

The court also examined the complaint for any specific analysis of the language in the

plan that might support Kelleher's claim.  Kelleher quoted some of the relevant plan

provisions in the complaint, including the specific paragraphs that include him within the

_____

[1] In November 2015, the bankruptcy judge who presided over the Shelbourne
bankruptcy case recused herself from this adversary proceeding and it was reassigned to the
undersigned judge.

definition of Released Parties who could have claims against them potentially released under

the plan. Complaint, Par. 61-63.  He then alleged that, as one of the "Released Parties," he is a

"beneficiary" of the release and injunction provisions.  Complaint, Par. 64.  He also quoted

part of the definition of "Released Claims," but he never stated how the Kelleher Loan falls

within that definition.  He simply declared that the NALM Parties' claims based on the

Kelleher Loan "constitute Released Claims" under the plan.  Complaint, Par. 68.  Thus,

neither Kelleher's response to the motion nor the complaint explain how the Kelleher Loan is

a "Released Claim" that  falls within the release and injunction provisions.  For good reason:

analysis of the relevant plan language leads only to the opposite conclusion - that these

provisions do not apply to the Kelleher Loan.

A.      Release Provision

Section 7.4 of the Shelbourne plan is entitled "Discharge and Release."  It provides that

"Released Parties," a term defined in the plan that includes Kelleher,[2] are released from "any

and all *Claims* and Interests of any kind . . . ," including but not limited to a long litany of

specific kinds of claims under the Bankruptcy Code.  It then states:  "the rights provided in

this Plan shall be in complete . . . (y) satisfaction, discharge and release of all *Claims*

constituting *Released Claims*," including but not limited to another litany of types of claims.

Plan, Par. 7.4 (emphasis added).  Finally, it provides, in all capital letters (that will not be used

here for ease of reading), the following:

> Further, but in no way limiting the generality of the foregoing, except as otherwise
> specifically provided in the Plan, an *entity accepting any distributions or rights*
> pursuant to this plan shall be presumed conclusively to discharge the debtor and
> reorganized debtor and have released the Released Parties from (a) the *Released*

---

[2] "Released Parties" is defined in Paragraph 1.76 of the plan to include the "Shelbourne Affiliates," which is defined in Paragraph 1.87 to include Garrett Kelleher.

> *Claims* and (b) any other cause of action based on the *same subject matter as the Claim or Interest on which the distribution or right is received*.

Plan, Par. 7.4 (emphasis added).

The two terms that determine the claims covered by this release provision are "Released Claims" and "Claim," both of which are defined in the plan.  "Released Claims" is defined in Paragraph 1.75 as:

> any and all *Claims*, whether at law or equity, against the Released Parties, including, without limitation, Avoidance Actions, the *Claims*, and all Causes of Action, whether known or unknown, either directly, indirectly or derivatively *through the Debtor or Reorganized Debtor on the same subject matter as any of the Claims, Interests, or Liens on the Debtor's Property,* but not including . . . .

Plan, Par. 1.75.  By defining "Released Claims" as "any and all Claims," the definition requires that a "Released Claim" must be a "Claim" in the first place.  "Claim" is defined in Paragraph 1.23 of the plan as "any 'claim' *against the Debtor* as defined in Section 101(5) of the Bankruptcy Code." (emphasis added).  Under these two definitions, a "Released Claim" must be a "claim against the Debtor."  While the definition of "Claim" in the plan incorporates the broad definition of a "claim" in the Bankruptcy Code, the key limiting phrase in the definition of "Claim" in the plan is that it must be a "claim *against the debtor*."  Plan, Par. 1.23 (emphasis added).  Released Claims are, therefore, first and foremost *claims against the debtor*.

After limiting "Released Claims" to "any and all Claims . . . against Released Parties," the definition then provides three examples of types of "Claims" in the "including without limitation" phrase.  It first refers to "Avoidance Actions," a defined term not relevant here, then it redundantly repeats "Claims," and finally it refers to certain types of "Causes of Action." "Causes of Action" is another defined term that includes a long list of possible claims

that arose before the effective date of the plan.  Plan, Par. 1.21.  This definition is not expressly

limited to claims against the debtor.  It is not clear how the definition of "Causes of Action"

differs from the definition of "claim" in § 101(5) of the Bankruptcy Code that is incorporated

into the definition of "Claim" in the plan.  Whatever was intended by referring to Causes of

Action as an example of a "Claim," however, the term is expressly limited by two key phrases

in Paragraph 1.75.  The "Causes of Action" included in "Released Claims":  (1) must be owed

"either directly, indirectly or derivatively through the Debtor or Reorganized Debtor" and (2)

must be "on the same subject matter as any of the Claims, Interests or Liens on the Debtor's

Property."  Plan, Par. 1.75.  This language makes it clear that the "Causes of Action" that fall

within "Released Claims" must arise from debts owed by the debtor (or reorganized debtor) in

some way - directly, indirectly, or derivatively, thus bringing the definition back to the initial

limitation to "Claims" against the debtor.  The "Claims" included must also be on the "same

subject matter" as a claim, "Interest,"[3] or lien on property of the debtor.[4]  So while this

definition of "Released Claim" is poorly drafted, it clearly limits Released Claims to those

arising from claims against the debtor.  Under these definitions, there is no reasonable basis for

contending that a debt owed solely by Kelleher that is not secured by property of the debtor is a

"Released Claim."  While Kelleher falls within the definition of a Released Party, this does not

release him from any claim in the world against him, or even any claim against him that is

---

[3] "Interest" is defined in the plan as "any partnership interest in the Debtor."  Plan, Par. 1.52.

[4] It should be noted that claims against property of the debtor are claims against the debtor.
*See, e.g., Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154 (1991) (a lien against the
debtor's property that survives a chapter 7 bankruptcy is a claim against the debtor in his subsequent
bankruptcy).  So while claims against the debtor and claims or liens against property of the debtor are
listed separately in the definition of Released Claims and in the release and injunction provisions, they
both fall within the definition of "Claim" in the plan.

8

somehow related to Shelbourne.  It releases him only of personal liability, presumably under a guaranty, on claims owed by the debtor.

The limited scope of Released Claims is also reflected throughout the long and tortured language of the release provision in Paragraph 7.4 of the plan.[5] The first sentence of Paragraph 7.4 defines the general scope of the release, providing that it covers "any and all *Claims* and Interests of any kind or nature whatsoever."  Thus, the limitation to "Claims" - which are only claims against the debtor - is included in the broadest statement of the scope of the release,

---

[5]The full text of Paragraph 7.4 is as follows:

7.4  <u>Discharge and Release</u>.  Except as specifically provided in this plan or in the Confirmation Order, effective on the Effective Date, the Released Parties shall be discharged from responsibility, obligation or liability for any and all Claims and Interests of any kind or nature whatsoever, including but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a Proof of Claim based on such Claim was filed or deemed filed under section 501 of the Bankruptcy Code, or such Claim was listed on the Schedules of the Debtor, (ii) such Claim is or was Allowed under Section 502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on or accepted this Plan.  Except as specifically provided in this Plan or Plan Documents to the contrary, the rights provided in this Plan shall be complete (x) satisfaction, discharge and release of all Claims or demands against, Liens on, and Interests in the Debtor (or the Reorganized Debtor), or the assets and properties of the Debtor (or Reorganized Debtor), including the Property, (y) satisfaction, discharge and release of all Claims constituting Released Claims, including but not limited to, all Causes of Action, whether known or unknown, either directly, indirectly or derivatively through the Debtor or Reorganized Debtor against the Released Parties or on the Property on the same subject matter as any of the Claims, Liens, or Interests described in subpart (x) of this Section 7.4, and (z) satisfaction, discharge and release of all causes of action of the Debtor or Reorganized Debtor, whether known or unknown, including but not limited to all Claims including the Released Claims, against the Released Parties.  FURTHER, BUT IN NO WAY LIMITING THE GENERALITY OF THE FOREGOING, EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THIS PLAN, ANY ENTITY ACCEPTING ANY DISTRIBUTIONS OR RIGHTS PURSUANT TO THIS PLAN SHALL BE PRESUMED CONCLUSIVELY TO DISCHARGE THE DEBTOR AND REORGANIZED DEBTOR AND HAVE RELEASED THE RELEASED PARTIES FROM (A) THE RELEASED CLAIMS AND (B) ANY OTHER CAUSE OF ACTION BASED ON THE SAME SUBJECT MATTER AS THE CLAIM OR INTEREST ON WHICH THE DISTRIBUTION OR RIGHT IS RECEIVED.

consistent with the definition of "Released Claims." The first sentence of Paragraph 7.4 then states that these "Claims" released include but are not limited to "all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code," which are all claims that can be made by a creditor against the debtor. It next provides that these "Claims" are released regardless of whether the claim was allowed under § 502 of the Bankruptcy Code or whether the holder of the claim voted on or accepted the plan. Again, only a creditor of the debtor (or an interest holder) would have a claim allowed under § 502 and would have the right to vote and get a distribution under a plan.

Paragraph 7.4 then provides in a very long second sentence that "the rights provided in this plan shall be (x) in complete satisfaction, discharge, and release of all Claims or demands, Liens on, and Interests in the debtor ... or the assets and properties of the Debtor ..., including" the Chicago Spire property. Thus, it is the "rights provided in this plan" that satisfy and cause the release of the "Released Claims," so only parties receiving rights under the plan could be bound. And once again, the release applies only to "Claims" against the debtor, interests in the debtor, and liens on property of the debtor.

The next release in clause (y) refers specifically to "Released Claims" and "Released Parties." As with clause (x), it is the "rights provided in this plan" that satisfy and cause the release of the claims described in clause (y). So clause (y) applies only to parties who receive rights under the plan. Clause (y) provides that the claims released by parties receiving rights under the plan are "all Claims constituting Released Claims," so clause (y) is expressly limited to "Claims" against the debtor. It then gives examples of the Released Claims in yet another "including but not limited to" clause that uses language similar to the language in the definition of Released Claims: "including but not limited to all Causes of Action, whether known or

10

unknown, either directly, indirectly or derivatively through the Debtor or Reorganized Debtor against the Released Parties or on the Property on the same subject matter as any of the Claims, Liens, or Interests described in subpart (x) of this Section 7.4 . . . ." Thus, the "Claims" that are "Released Claims" to which the release in (y) applies must be owed by the debtor (including claims against property of the debtor) and be "on the same subject matter" as the claims and interests described in clause (x). And as discussed above, the claims and interests described in clause (x) are claims against the debtor (including claims against property of the debtor) and interests in the debtor. Clause (y) is therefore limited in multiple ways to claims against the debtor and interests in the debtor.[6]

Finally, Paragraph 7.4 concludes with language in all capital letters providing that any entity accepting any distributions or rights under the plan is "presumed conclusively to discharge the debtor . . . and have released the Released Parties from (A) the Released Claims and (B) any other cause of action based on the same subject matter as the Claim or Interest on which the distribution or right is received." This sentence reinforces that the release provision only requires parties who received distributions under the plan to release Released Claims, which must be claims against the debtor or its property. The last clause in all capital letters is curious. It suggests that claims could be released that do not fall within the definition of "Released Claims," but even then only from causes of action "based on the same subject matter as the Claim or Interest on which the distribution or right is received." Thus, even this potential "add- on" to the definition of a Released Claim is expressly tied to "Claims" and "Interests" in the debtor for which the releasing party is receiving a distribution of money or rights under the

---

[6] Clause (z) of Paragraph 7.4 also refers to Released Parties and Released Claims, but it releases the only *the debtor's* and the reorganized debtor's causes of action against the Released Parties. The inconsistencies in this clause need not be addressed because clause (z) does not apply here.

plan. Every clause in Paragraph 7.4 reflects the fundamental limitation of the release:  it applies only against creditors or interest holders who are receiving distributions or rights under the plan.

Kelleher failed to offer any interpretation of the definitions of "Released Claim" and "Claim" or the language in Paragraph 7.4 under which the Kelleher Loan falls within these provisions.  The Kelleher Loan is not a "Claim" against the debtor, and therefore it is not a "Released Claim" that could possibly fall within the release in Paragraph 7.4. NALM received no rights under the plan that could trigger the "satisfaction, discharge and release" language in clauses (x), (y), or (z) of the provision.  And the Kelleher Loan did not arise "either directly, indirectly or derivatively through the debtor" and is not "on the same subject matter as any of the Claims, Liens or Interests described in subpart (x)," as required in clause (y) of the release provision.  There is no reasonable basis for Kelleher's assertion that the release provision applies to the Kelleher Loan.

B.    Injunction Provision

The injunction provision in the plan is similarly limited to claims against the debtor, its property, and interests.  Paragraph 7.5 of the plan, entitled "Discharge Injunction," enjoins anyone from trying to collect on any "Claim" or interest from the Released Parties.  It provides that the plan will operate as a permanent injunction of any act to collect "any Claim or demand" against the released parties.

Like the release provision, Paragraph 7.5 is poorly drafted with many redundant provisions.[7] It contains three clauses that describe the claims to be enjoined, each of which is limited primarily to "Claims" and, therefore, to claims against the debtor. Clause (a) enjoins any effort to collect on "any Claim, demand or equity Interest in the Released Parties by any Entity." A "Claim" is only a claim against the debtor and an Interest is a partnership interest in the debtor. Clause (b) refers to "any Claim or demand . . . against the Released Parties by any Entity, based on the same subject matter as any Claim, demand or Interest described in Section 7.4, including without limitation any guaranties by released Parties of any such Claims, demands or Interests." This phrase also limits the claims covered to "Claims" and, therefore, to claims against the debtor. It further limits the injunction to claims covered in the release provision, and specifically mentions guarantees given by Released Parties. Clause (c) refers to

---

[7] Paragraph 7.5 of the plan provides in full as follows:

7.5 <u>Discharge Injunction</u>   Except as specifically provided in the Plan Documents to the contrary, upon entry of the Confirmation Order, this Plan will operate as a permanent injunction prohibiting and enjoining the commencement or continuation of any action, the employment of process or any act to collect, recover from, or offset (a) any *Claim* or demand against or equity Interest in the Released Parties by any Entity, (b) any *Claim* or demand, whether known or unknown, against the Released Parties by any Entity, based on the same subject matter as any *Claim*, demand or Interest described in Section 7.4, including without limitation, any guaranties by Released Parties of any such *Claims*, demands or Interests, or (c) any *Claim* or demand against, any security interest in or any lien, claim or encumbrance on the Property by any Entity. BY ACCEPTING DISTRIBUTIONS PURSUANT TO THIS PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION. ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASE UNDER SECTIONS 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

Plan, Par. 7.5 (italics added).

claims against property of the debtor, which are claims against the debtor.  The Kelleher Loan,

which does not involve a claim against the debtor or an interest in the debtor, does not fall

within any of these three clauses.

Like Paragraph 7.4, the injunction provision ends with sentences in all capital letters

(omitted here) that reinforce the limited nature of the injunction.  The first sentence in capital

letters provides:

> By *accepting distributions pursuant to this plan*, each *holder of an allowed
> Claim or Interest* will be deemed to have specifically consented to this
> injunction.

Plan, par 7.5 (emphasis added).  The clear import of this sentence is that the injunction applies

only to parties who accept distributions under the plan.  Only a holder of an allowed claim or

interest would get a distribution under the plan and could therefore be bound by the injunction.

As noted above, the NALM Parties were not creditors of the debtor, they held no interests in the

debtor, they were not entitled to vote on the plan, and they received no distribution under the

plan.  Therefore, the injunction could not apply to them.[8]

In fact, for the injunction to apply to the NALM Parties and the Kelleher Loan, the

injunction provision and the disclosure statement must have clearly identified NALM as a

party bound by it and the Kelleher Loan as a claim to which it applied.  Rule 3016(c) of the

Federal Rules of Bankruptcy Procedure requires that if a plan contains an injunction against

conduct not otherwise enjoined by the Bankruptcy Code, both the plan and the disclosure

statement must "describe in *specific and conspicuous language* (bold, italic, or underlined text)

*all acts to be enjoined* and *identify the entities that would be subject to the injunction."*  Fed. R.

---

[8] In fact, the injunction would not apply to the Kelleher Loan even if the NALM Parties had been
creditors holding claims against the debtor because the debtor had no liability for the Kelleher
Loan and it was not secured by property of the debtor or an interest in the debtor.

14

Bankr. P. 3016(c) (emphasis added).  The plan and disclosure statement do neither.  The

NALM Parties are not identified anywhere in the plan or the disclosure statement.  They are

not creditors or interest holders and did not receive any distribution or rights under the plan, so

they could not be "identified" generically as creditors, interest holders or other "entities"

receiving distributions under the plan.  And the Kelleher Loan is not even mentioned in the

disclosure statement or the plan so collecting on it has not been identified as an act to be

enjoined.  It is abundantly clear, therefore, that the Kelleher Loan was not covered by the

release or injunction.

It is not surprising, then, that Kelleher made no attempt to parse the language of the

plan to support his claim that the release and injunction provisions apply to the Kelleher Loan.

The court warned Kelleher and his counsel during the December 17, 2015 hearing that he

would need a "straight line" connecting the Kelleher Loan to the release and injunction

provisions to have any chance of success in the adversary proceeding.  The court specifically

referred to the definitions of "Claim" and "Released Claims" that appeared to exclude the

Kelleher Loan. Kelleher therefore knew that he would need to cite specific language in the plan

that demonstrated that the Kelleher Loan fell within those definitions and the language of the

release and injunction provisions.  By failing to address the plan language in his response,

Kelleher has essentially conceded that there is no reasonable argument under which the

Kelleher Loan falls within the release and injunction provisions.

C.    Kelleher's Arguments

Instead of making any argument based on specific language in the plan, Kelleher makes

a number of other arguments in his response, none of which affects the court's analysis of the

release and injunction provisions.

15

1.      "Existing Law" regarding Plan Injunctions

First, Kelleher states that the NALM Parties seem to contend that the plan injunction could not, as a matter of law, have enjoined NALM, as a non-creditor, from suing Kelleher, a non-debtor.   Kelleher then argues that existing law would indeed permit such an injunction. The court need not resolve this theoretical issue because the plan does not in fact release or enjoin collection of the Kelleher Loan for all the reasons discussed above.

The court notes, however, that the two cases cited by Kelleher would not permit the enforcement of the release and injunction against the NALM Parties in this case.  The first case cited, *In re Airadigm Communications, Inc.*, 519 F.3d 640 (7th Cir. 2008), addressed only whether a plan could release the claim of a creditor against a non-debtor when the creditor objected to the release.  It did not discuss whether a plan could release a claim of a non-creditor against a non-debtor.

In the second case cited by Kelleher,  *In re Ingersoll, Inc.*, 562 F.3d 856 (7th Cir. 2009), the court acknowledged that there may be unusual circumstances in which a non-debtor could be released from liability to a non-creditor when the release is specifically provided for in the plan. The court cautioned, however, that such releases are not "always - or even normally - valid" and that most will not "pass muster."  562 F.3d at 865.  The court also required that a party whose claim is extinguished must receive "fair notice and an opportunity to object."  *Id.*[9]

In this case, neither the plan nor the disclosure statement even mentioned the Kelleher Loan, let alone gave a clear notice that it would be released in the plan.  As noted above, the

---

[9] The release provision in the plan in *Ingersoll* specifically identified both the non-debtor and non-creditor parties who would be bound and the lawsuits from which the claims covered arose. 562 F.3d at 862.

16

NALM Parties were not creditors, they had no right to vote or object to the plan, and they received no distribution under the plan. They had no reason to believe they could be barred from collecting the Kelleher Loan under either provision in the plan and, therefore, no reason to object to it before confirmation. In these circumstances, none of the requirements for releasing or enjoining claims of non-creditors against non-debtors could even possibly be met. Whether it might have been possible to include the Kelleher Loan within the release and injunction provisions of the plan with proper notice and an opportunity to object is irrelevant.

2.       Why Statements Were Sent to Kelleher at U.S. Address

Kelleher next takes issue in his response with the NALM Parties' explanation of why they began sending notices to Kelleher at his address in the U.S. This issue makes no difference here. The plan does not bind the NALM Parties in connection with the Kelleher Loan, so the reason that notices were sent to the U.S. is irrelevant.

3.       Settlement Agreement in Shelbourne Bankruptcy Case

Kelleher also refers in his response to a settlement agreement entered into by the debtor, various Shelbourne entities, RMW, and Kelleher (the "Settlement Agreement"). He makes no specific argument based on the Settlement Agreement, but he suggests that it supports his contention that the Kelleher Loan falls within the release and injunction provisions. NALM was not a party to the Settlement Agreement. It contains one provision under which the debtor and the "Debtor Affiliates" agree to waive any claims they have against NALM and not to sue it regarding the "Mortgage Debt." Settlement Agreement, Ex. D to Kelleher Response Brief, Par. 22. Kelleher is included in the definition of "Debtor Affiliates," but "Mortgage Debt" refers to the debt owed by the debtor on loans made to it by Anglo Irish Bank, *i.e.*, the Shelbourne Loans. Settlement Agreement, Par. CC, G. This provision has nothing to do with

17

the Kelleher Loan, which is not owed to RMW, is not secured by property of the debtor, and is

not mentioned at all in the Settlement Agreement.

In fact, far from supporting Kelleher's argument that the release and injunction

provisions apply to the Kelleher Loan, the Settlement Agreement supports the opposite

conclusion:  the plan  does not release the Kelleher Loan.  As Kelleher alleged in the

complaint, the Amended Joint Chapter 11 Plan filed by the debtor "implemented" the terms of

the Settlement Agreement.  Complaint, Par. 58 - 59.   The Second Amended Joint Plan was

ultimately confirmed.  Order Confirming Plan, entered October 7, 2014 (Docket No. 327).

Paragraph W of the "Whereas" clause of the Settlement Agreement provides that the debtor

will file an amended plan and disclosure statement consistent with the terms of the agreement.

Paragraph 7 states that the debtor will file a motion to approve the agreement under Rule 9019

of the Federal Rules of Bankruptcy Procedure in the bankruptcy court on or before March 19,

2014. Paragraph 8 provides that the debtor will then file an amended plan that will be a joint

plan proposed by the debtor and the RMW Entities consistent with the terms of the Settlement

Agreement.  The order confirming the plan also expressly provides that the plan implements

the terms of the Settlement Agreement.   Order Confirming Plan, entered Oct. 7, 2014, Par. F

(Docket No. 327).  Thus, the Settlement Agreement formed the basis for the joint amended

plan proposed by the debtor and the RMW Entities that was confirmed by the court.

The Settlement Agreement expressly identifies the loans that are the subject of the

agreement and the joint plan in Paragraphs G and H of the recitals section (pages 3-4).

The Kelleher Loan is not mentioned there or anywhere else in the Settlement Agreement.

The agreement determines who will be paid how much under the joint plan and then

specifically provides for the releases to be included in the proposed plan.  Paragraph 18 of

18

the Settlement Agreement calls for "Mutual Releases," providing that the RMW Entities, the Debtor, the Debtor Affiliates (which include Kelleher), and Atlas "shall exchange broad general releases of any and all claims counterclaims . . . and causes of action . . . ." Thus, the releases contemplated by this paragraph are only to be "exchanged" among the parties to the agreement and arise from the loan and other agreements identified in the Settlement Agreement.  They could not possibly release the claim of NALM against Kelleher for the Kelleher Loan because NALM was not a party to the agreement.

Paragraph 19, entitled "Further Kelleher Releases," then specifically addresses "further" releases Kelleher will receive.  It states that, subject to the various payments to be made to RMW under the Settlement Agreement and proposed plan, "the RMW Entities" agree that they will not attempt to enforce any judgment "obtained in connection with any guaranties made by Kelleher" and that any such "judgments will be extinguished" and the "guaranties released."  It continues:

> For the avoidance of doubt, the guaranties being released shall include, but not be limited to, the guaranties provided to the Bank and Case.  Furthermore, upon entry of the 9019 Order, RMW will release Kelleher from his obligations under any guaranty by Kelleher related solely to the Mortgage Debt.

Settlement Agreement, Par. 19.[10]  Thus, this paragraph provides that Kelleher will be released only from "guaranties" of debts owed by the debtor.

Nothing in Paragraphs 18 or 19 could arguably include the Kelleher Loan in the releases to be provided under the Settlement Agreement or the plan.  The definition of Released Claims

_____

[10] "Bank" is defined in the Settlement Agreement as Anglo Irish Bank Corporation, who made the original loan to the debtor that was transferred to NALM, who transferred it to RMW. Thus, the guaranty to the "Bank" appears to be the same as one held by RMW when the Settlement Agreement was entered, that is the subject of the final sentence in this paragraph. "Case" refers to Case Foundation Company, with whom the debtor entered into an agreement as described in Paragraph J of the agreement that was guaranteed by Kelleher.

19

and the release and injunction provisions are entirely consistent with the release provisions in

the Settlement Agreement:  they release only guaranty claims or other claims that may exist

between the parties to the Settlement Agreement.  Neither the Settlement Agreement on which

the plan was based nor the plan itself provide for the release of or an injunction against

collection of the Kelleher Loan.

### 4.    Arguments Suggested in Complaint

Finally, the court has considered two arguments that Kelleher did not expressly make

in his response but that are suggested by the allegations in the complaint.  Neither argument

has merit.

First, the complaint suggests that NALM's intervention in the bankruptcy case for the

limited purpose of protecting its confidential information was sufficient to bind NALM to the

terms of the plan, even though it was not a creditor, had no right to vote on the plan, and

received nothing under the plan.  Kelleher's counsel suggested at a status hearing on

December 17, 2015 that this involvement in the bankruptcy case is a potential justification for

concluding that the release and injunction apply to NALM regarding the Kelleher Loan.  As

the court noted at the December 17 hearing, this argument has no merit.  The court presiding

over the Shelbourne bankruptcy case granted NALM's motion to intervene in that case  "for

the limited purposes described in the motion," which were to protect its confidential

information.  Order entered March 5, 2015 (docket No. 157).   This limited appearance did

not transform NALM into a creditor who could be bound by a plan, and it could not transform

the Kelleher Loan into a claim released in the plan.

Second, Kelleher alleges in the complaint that the Kelleher Loan was secured in part with Kelleher's interest in Milltown LLC.   Milltown LLC is not the debtor or property of the debtor, and an interest in Milltown LLC is not an interest in the debtor, so this security interest in Kelleher's interest in Milltown has no impact on the conclusion that the release and injunction in the plan do not apply to the Kelleher Loan.

III.     <u>Conclusion</u>

Kelleher has failed to present any plausible legal or factual basis for his claim that the release and injunction provisions in the Shelbourne plan apply to the Kelleher Loan.   The motion to dismiss the complaint will therefore be granted.

Dated: September 6, 2016

ENTERED:

Carol A. Doyle
United States Bankruptcy Judge